UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMERICAN GUARANTEE AND )
LIABILITY INSURANCE COMPANY )
                                             )     Case No. 07-CIV-6038 (DAB)(THK)
              Plaintiff, )
)
vs. )
)
GERALD M. LEMUS, Individually, and )
JOHN R. WATSON, Individually, )
)
              Defendants. )
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Mark G. Ledwin, Esq. (ML-6873)
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

Attorneys for Plaintiff American Guarantee and
Liability Insurance Company

1736168.1

## INTRODUCTION

This Memorandum of Law is submitted on behalf of Plaintiff AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY ("Plaintiff" or "American") in support of its motion for the entry of summary judgment against Defendants GERALD R. LEMUS ("Lemus") and JOHN R. WATSON ("Watson") (individually and together, jointly and severally, referred to as "Defendants"). Submitted herewith is the Affidavit of W. William Cookson ("Cookson Aff.") and the Declaration of Mark G. Ledwin ("Ledwin Dec."), and certain Exhibits annexed thereto, to which the Court is respectfully referred herein.

## FACTUAL BACKGROUND

Plaintiff American is an insurance company incorporated in the State of New York, with its statutory home office located at One Liberty Plaza, 165 Broadway, New York, New York 10006.

Defendant Lemus is an individual residing in Volusia County, Florida. Defendant Watson is an individual residing in Orange County, Florida. Non-party Independent Wholesale, Inc. ("Independent") is a distributor of certain products, including, but not limited to, cigarettes and loose tobacco products. Defendants Lemus and Watson are the principal owners of Independent.

In order to distribute cigarettes and/or tobacco products in the State of Florida (the "State"), a business must attach a tax stamp to each product indicating that the State tax on the product has been paid. Such tax stamps are purchased from the State. Pursuant to Florida Statutes, a surety bond must be posted with the State by all wholesale distributors of cigarettes and tobacco products, which bond obligates the surety thereon to pay to the State any cigarette or

tobacco taxes not paid by the principal on the bond. Once the bonds are posted, the distributor may purchase tax stamps on credit from the State in amounts up to the penal sum of the bonds.

As requested by Defendants (which request is recited in the Agreements (as hereinafter defined)), on December 20, 2001, American issued to the State a Surety Bond having a penal sum in the amount of $1,000,000.00 (the "Cigarette Bond"), and providing bond credit for purchases by Independent of cigarette tax stamps, and a Surety Bond having a penal sum in the amount of $50,000.00 (the "Tobacco Bond"), and providing bond credit for purchases by Independent of loose tobacco products (the Cigarette Bond and the Tobacco Bond being referred to herein together as the "Bonds"). *See* Cookson Affidavit, Composite Exhibit 1.

In partial consideration of American's issuance of the Bonds, on December 20, 2001, and again on November 14, 2002, Defendants Lemus and Watson executed Agreements of Indemnity (the "Agreements"), and in which Lemus and Watson are referred to as Indemnitors and American is referred to as Surety. *See* Cookson Aff., Exhibits 2 and 3.

The Agreements provide, *inter alia*:

> INDEMNITY: The Indemnitors will exonerate, indemnify, and hold harmless Surety… against any and all liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety…may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof.
>
> PLACE IN FUNDS: To further protect, exonerate and save harmless Surety …, the Indemnitors shall pay over to Surety, all sums of money which Surety shall pay or cause to be paid **_or may be liable to pay_** in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to Surety, as soon as Surety notifies Indemnitors to deposit such funds with Surety, **_whether or not Surety shall have paid out such sum or any part thereof_**. Surety is hereby authorized to use such funds, or any part thereof, in payment or

> settlement of any such demand, claim, liability or other obligations for which Indemnitors may be liable to Surety under the terms of this agreement.
>
> (emphasis added).
>
> JURISDICTION: The Principal and Indemnitors irrevocably consent to the exclusive jurisdiction of the Courts of the County and State of new York and the Federal Courts of the Southern District of New York in all matters affecting or arising out of their obligations under this Agreement and agree that the construction, validity and performance of this Agreement shall be governed by the laws of the State of New York.
>
> EXECUTION/JOINT-SEVERAL: In addition to the rights and remedies provided herein,...Surety shall have any and all rights and remedies provided by law and/or in equity, all of which shall be cumulative...Surety may enforce this Indemnity Agreement against any or all of the Indemnitors and/or the Principal without first exercising any other right or remedy...The liability of the Principal and the Indemnitors shall be joint and several. The obligations of the Principal and the Indemnitors under this Indemnity Agreement are continuing obligations and may not be revoked.

See Cookson Aff., Exhibits 2 and 3, at Paragraphs 2, 4, 13 and 15.

On April 21, 2006 (the "Petition Date"), Independent filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code captioned as *In Re: Independent Wholesale, Inc.*, Case No. 06-00882, in the United States Bankruptcy Court, Middle District of Florida (the "Bankruptcy Matter"). The Bonds were in effect continuously prior to and on the Petition Date.

On or about August 17, 2006, the State filed two (2) Proofs of Claim (respectively, the "Cigarette Proof of Claim" and the "Tobacco Proof of Claim," and together, the "Proofs of Claim") in the Bankruptcy Matter for cigarette tax stamps and tobacco tax stamps sold by the State to Independent on credit prior to the Petition Date and for which Independent has not paid. See Cookson Aff., Exhibits 4 and 5. The State's Cigarette Proof of Claim claims $512,122.57 due and owing for cigarette tax stamps sold to Independent on credit on or prior to the Petition

Date. The State's Tobacco Proof of Claim claims $128,889.44 due and owing for tobacco product tax stamps sold to Independent on credit on or prior to the Petition Date.

Including the Proofs of Claim filed by the State, various unsecured and priority creditors of Independent have filed proofs of claim in excess of $1.55 million. Further, a secured creditor who alleges to have a lien on all of Independent's assets has filed a secured proof of claim in the sum of $8.597 million. Independent filed a motion in the Bankruptcy Matter to sell substantially all of its assets for the sum of $3.098 million and which sum will be insufficient to pay off even its secured creditor.

In light of the respective penal sums of the Bonds, American may be liable to the State for Independent's failure to pay for tax stamp purchases on or prior to the Petition Date in the total amount of $562,122.57, to wit: $512,122.57 in unpaid cigarette stamp taxes and $50,000.00 in unpaid loose tobacco stamp taxes (together, the "Bonded Tax Claims"). The Bonded Tax Claims constitute "liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety…may sustain or incur by reason of, or in consequence of, the execution of such bonds," as provided in the Agreements, and as to which Defendants are obligated to indemnify American. The Bonded Tax Claims remain unpaid and outstanding.

As more fully set forth in the Declaration of Mark G. Ledwin, Esq. submitted herewith, American has incurred and paid attorneys' fees and expenses up through and including August 31, 2007, in the sum of $51,365.86 in connection with the Bankruptcy Matter and the instant litigation for which it is entitled to be indemnified by Defendants under the Agreements. American will incur additional attorneys' fees and expenses in connection with this action and the preparation and filing of this motion of $12,000.00 for which it is also entitled to be

indemnified by Defendants. American believes that all such attorneys' fees and expenses are reasonable.

American has posted a reserve of its own funds in excess of $613,000.00 to cover losses on the Bonds and related fees and expenses. In so doing, American has set aside and segregated funds to pay its obligations under the Bonds, thereby making such funds unavailable for other corporate purposes.

Pursuant to the express and unequivocal terms of the Agreements, the Defendants are unconditionally obligated to pay to American collateral security for any and all amounts that American has paid or may be liable to pay in connection with any losses on the Bonds, and any related fees, including but not limited to, attorneys' fees and expenses. American has duly demanded that Defendants comply with their obligations under the Agreements. Defendants have failed and refused to place American in funds and otherwise to perform their obligations under the Agreements. As such, Defendants have breached their express obligations under the Agreements.

As a result of Defendants' breach of the Agreements, American has suffered actual damages, and may suffer further and additional damages. Under the express terms of the Agreements, Defendants are jointly and severally liable for their breach of the Agreements.

## ARGUMENT

### A.  The Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matters that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). The substantive law determines which facts are material to the outcome of a particular litigation. *See Anderson*, 477 U.S. at 250; *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Hurwitz v. Sher*, 982 F.2d 778, 780 (2d Cir. 1992), *cert. denied*, 113 S.Ct. 2345 (1993). Summary judgment is appropriate "only when reasonable minds could not differ as to the import of the evidence." *Sure-Trip v. Westinghouse Eng'g.*, 47 F.3d 526, 533 (2d Cir. 1995).

If the party moving for summary judgment meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations nor speculation. *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997). Rather, "the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport v. Starter Sportswear*, 964 F.2d 186, 188 (2d Cir. 1992) (citations

omitted). That is, "[t]here must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." *Heublein, Inc. v. United States*, 996 F2d 1455, 1461 (2d Cir. 1993). Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994).

As discussed herein, under the foregoing standards, entry of summary judgment in favor of American is appropriate since there are no issues of material fact and American is entitled to judgment as a matter of law.

**B.     Plaintiff Is Entitled To The Entry Of Summary Judgment As A Matter of Law**

In *BIB Constr. Co. v. Fireman's Ins.*, 214 A.D.2d 521 (1st Dep't 1995), the First Department held that a provision in an indemnity contract between a contractor and performance surety – under which the contractor promised to furnish the surety with a cash reserve for any pending litigation concerning the performance bond upon demand by the surety and in an amount established in the surety's "sole discretion" – was a "collateral security requirement," subject to enforcement by specific performance. The *BIB* court stated:

> The posting of an adequate reserve does not represent a claim for damages or an award in indemnification. It is merely collateral security held in trust by the insurer that must be repaid to the extent that damages are reduced or not awarded (*American Motorists Ins. Co. v. United Furnace Co.*, 876 F.2d 293, 300 [2d Cir.]). By contrast, liability arising from an award for indemnification constitutes "a present obligation to pay a sum certain, and not mere exposure to the hazard of unliquidated claims which may or may not ripen in the future" (*National Surety Corp. v. Titan Constr. Corp.*, 26 N.Y.S.2d 227, 230, aff'd 260 A.D. 911).

*Id.* at 523.

The *BIB* court further held that the collateral security provision at issue was not based on the maturity or liquidation of any claims, but represented security, in an amount within the sole discretion of the surety, in anticipation of possible losses. *Id.*

More recently, in *Colonial Surety Co. v. Genesee Valley Nurseries*, 5 A.D.3d 1024 (4th Dep't 2004), the Fourth Department held that the plaintiff surety company was entitled to the posting of collateral security by the defendants. Pursuant to the terms of a general indemnity agreement between the parties, the defendants were required to furnish collateral security upon the surety's demand in the event that a claim was asserted against the surety. The *Colonial* court held that the surety had demonstrated its entitlement to judgment as a matter of law by submitting proof that it received claims under the bond it issued on behalf the defendants. The *Colonial* court further held that in opposition, the defendants failed to raise a triable issue of fact. Rather, the defendants challenge to the surety's right to collateral security "confuses the requirement to furnish collateral security with an award [of] indemnification." *Id.* at 1025.

In the instant case, American, in effect, seeks specific performance with respect to the place-in-funds provision of the Indemnification Agreements. Given the bankruptcy proceedings commenced by Independent and the Proofs of Claim filed by the State of Florida therein, there is a strong likelihood that American will incur substantial liability at some time in the near future. Under the plain and unambiguous place-in-funds provisions of the Indemnity Agreements, American is entitled to specific performance compelling the Defendants to post collateral security.

In both *BIB* and *Colonial*, the indemnification agreements at issue specifically stated that the indemnitor was required to furnish the surety with collateral security upon the surety's

demand where a claim had been asserted against the surety. Here, the place-in-funds provision is not limited to only those situations where a claim or demand against American has been asserted. Rather, it clearly states that American can demand collateral security in anticipation of a claim against it for all sums that it "may be liable to pay" and regardless of "whether or not Surety shall have paid out such sums or any part thereof." *See* Cookson Aff., Exhibits 2 and 3.

Under New York law, "[i]t is well settled that a surety may secure its rights by written contract with the principal or another who promises to make good for the loss." *Matter of Liquidation of New York Surety Co.*, 300 A.D.2d 401 (2d Dep't 2002). "When interpreting contracts ... when parties set down their agreement in a clear, complete document, their writing should ... be enforced according to its terms." *Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004).

In *National Surety Corp. v. Titan Constr. Corp.*, 26 N.Y.S.2d 227, 230 (N.Y. Sup. Ct.), *aff'd* 260 A.D. 911 (1st Dept. 1940), the case upon which the First Department's decision in *BIB* is based, an indemnity agreement provided that:

> [I]f the surety ... shall set up a reserve to cover any claim, suit or judgment under [the] bond, the indemnitors ... will immediately[,] upon demand, deposit with the surety a sum of money equal to such reserve, such sum to be held by the surety as collateral security on [the] bond.

*Id.* at 230.

Upon being informed that a third party intended to file suit against it, and expecting other possible suits, the surety set up a reserve to protect itself against future liabilities. The surety then demanded security in the amount of the reserve from the indemnitor. The court held that the surety had stated an equitable claim for specific performance against the indemnitor. The

-9-

1736168.1

court noted that another provision of the agreement provided for a remedy at law for indemnification after liability had arisen. *Id.* at 230. Where liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but did have an equitable remedy for specific performance of the collateral-security provision. *Id.* at 230-31. The court stated:

> If the parties had intended to give security deposited upon the maturity or liquidation of claims, they would have conditioned the defendants' obligation upon such maturity or liquidation, instead of providing, as they did, for the giving of security whenever the plaintiff, in anticipation of possible losses, might set up a reserve to cover them.

*Id.* at 231. *See also American Motorists Ins. v. United Furnace Co.*, 876 F.2d 293, 301 (2d Cir. 1989) (courts will enforce collateralization provisions of indemnification agreements provided that the intent of the parties is made clear).

Accordingly, under the plain and unambiguous terms of the Indemnity Agreements, Lemus and Watson are jointly and severally liable to American for any and all damages which American may be found liable to the State of Florida, as well as all attorneys' fees, expenses and costs incurred and to be incurred by American as a consequence of Independent's bankruptcy and the State's filed Proofs of Claim, and as a result of having to enforce the Indemnity Agreements through the prosecution of this action. *See Lori-Kay Golf, Inc. v. Lassner*, 61 N.Y.2d 722, 724, 472 N.Y.S.2d 612, 614 (1984) (broadly worded terms of indemnification agreement executed in favor of surety are to be enforced). Summary judgment in favor of American, therefore, is plainly appropriate. *See, e.g., American Motorists Ins. Co. v. Pennsylvania Beads Corp.*, 983 F.Supp. 437, 440-42 (S.D.N.Y. 19997) (summary judgment entered on claim under indemnity agreement signed in connection with a surety bond; attorneys'

fees and expenses awarded); *Forum Ins. Co. v. Ravkind*, 1991 WL 274478 (S.D.N.Y. 1991) (same).

## CONCLUSION

For all of the reasons set forth above, American respectfully requests that the Court grant the instant motion for summary judgment and enter a judgment against Defendants Lemus and Watson, individually, jointly and severally, directing them to post collateral security in the sum of $562,122.57 representing the Bonded Obligations, together with the sum of $63,365.86 representing the reasonable attorneys' fees and expenses incurred by American in connection with the Bankruptcy Matter and the instant litigation, for an aggregate total judgment amount of $625,488.43, together with any and all other relief that this Court shall deem just and proper.

Dated: White Plains, New York
       November 9, 2007

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

By: */s/ Mark G. Ledwin*
    Mark G. Ledwin, Esq. (ML-6873)
    3 Gannett Drive
    White Plains, New York 10604
    (914) 323-7000

    Attorneys for Plaintiff American Guarantee Liability and Insurance Company

1736168.1