Mark G. Ledwin, Esq. (ML-6873)
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
Attorneys for Plaintiff
3 Gannett Drive
White Plains, New York 10604
Tel: (914) 323-7000
Fax: (914) 323-7001
Email: mark.ledwin@wilsonelser.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| AMERICAN GUARANTEE AND<br>LIABILITY INSURANCE COMPANY )<br><br>Plaintiff, )<br><br>vs. )<br><br>GERALD M. LEMUS, Individually, and<br>JOHN R. WATSON, Individually, )<br><br>Defendants. ) | Case No. 07-CIV-6038 (DAB)(THK) |

-------------------------------------------------------------X


**AFFIDAVIT OF W. WILLIAM COOKSON IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


STATE OF MASSACHUSETTS    )
                          ) SS:
COUNTY OF DUKES           )


W. WILLIAM COOKSON, first being duly sworn, hereby states under the penalty of

perjury as follows:

1.    I am a Claims Counsel with Plaintiff AMERICAN GUARANTEE AND

LIABILITY INSURANCE COMPANY ("Plaintiff" or "American"), and as such I have personal

knowledge of all facts set forth herein.


1735986.2

2.    I make this Affidavit in support of Plaintiff American's motion for the entry of summary judgment against Defendants GERALD R. LEMUS ("Lemus") and JOHN R. WATSON ("Watson") (individually and together, jointly and severally, referred to as "Defendants").

3.    Plaintiff American is an insurance company incorporated in the State of New York, with its statutory home office located at One Liberty Plaza, 165 Broadway, New York, New York 10006.

4.    Defendant Lemus is an individual residing in Volusia County, Florida.

5.    Defendant Watson is an individual residing in Orange County, Florida.

6.    Non-party Independent Wholesale, Inc. ("Independent") is a distributor of certain products, including, but not limited to, cigarettes and loose tobacco products.

7.    Defendants Lemus and Watson are the principal owners of Independent.

8.    In order to distribute cigarettes and/or tobacco products in the State of Florida (the "State"), a business must attach a tax stamp to each product indicating that the State tax on the product has been paid.  Such tax stamps are purchased from the State.

9.    Pursuant to Florida Statutes, a surety bond must be posted with the State by all wholesale distributors of cigarettes and tobacco products, which bond obligates the surety thereon to pay to the State any cigarette or tobacco taxes not paid by the principal on the bond. Once the bonds are posted, the distributor may purchase tax stamps on credit from the State in amounts up to the penal sum of the bonds.

10.    As requested by Defendants (which request is recited in the Agreements (as hereinafter defined)), on December 20, 2001, American issued to the State a Surety Bond having a penal sum in the amount of $1,000,000.00 (the "Cigarette Bond"), and providing bond credit

2

for purchases by Independent of cigarette tax stamps, and a Surety Bond having a penal sum in the amount of $50,000.00 (the "Tobacco Bond"), and providing bond credit for purchases by Independent of loose tobacco products (the Cigarette Bond and the Tobacco Bond being referred to herein together as the "Bonds"). True and correct copies of the Bonds are attached hereto as **Composite Exhibit 1** and incorporated by reference herein.

11.    In partial consideration of American's issuance of the Bonds, on December 20, 2001, and again on November 14, 2002, Defendants Lemus and Watson executed Agreements of Indemnity (the "Agreements"), true and correct copies of which are attached hereto as **Exhibit 2** and **Exhibit 3**, respectively, and incorporated by reference herein, and in which Lemus and Watson are referred to as Indemnitors and American is referred to as Surety.

12.    The Agreements provide, *inter alia*:

INDEMNITY: The Indemnitors will exonerate, indemnify, and hold harmless Surety… against any and all liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety…may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof.

PLACE IN FUNDS: To further protect, exonerate and save harmless Surety …, the Indemnitors shall pay over to Surety, all sums of money which Surety shall pay or cause to be paid *or may be liable to pay* in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to Surety, as soon as Surety notifies Indemnitors to deposit such funds with Surety, *whether or not Surety shall have paid out such sum or any part thereof*. Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability or other obligations for which Indemnitors may be liable to Surety under the terms of this agreement.

(emphasis added).

JURISDICTION: The Principal and Indemnitors irrevocably consent to the exclusive jurisdiction of the Courts of the County and State of new York and the Federal Courts of the Southern District of New York in all matters affecting or arising out of their obligations under this Agreement and agree that the

3

1735986.2

construction, validity and performance of this Agreement shall be governed by the laws of the State of New York.

EXECUTION/JOINT-SEVERAL:    In addition to the rights and remedies provided herein,…Surety shall have any and all rights and remedies provided by law and/or in equity, all of which shall be cumulative…Surety may enforce this Indemnity Agreement against any or all of the Indemnitors and/or the Principal without first exercising any other right or remedy…The liability of the Principal and the Indemnitors shall be joint and several.  The obligations of the Principal and the Indemnitors under this Indemnity Agreement are continuing obligations and may not be revoked.

*See* **Exhibits 2** and **3**, at Paragraphs 2, 4, 13 and 15.

13.    On April 21, 2006 (the "Petition Date"), Independent filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code captioned as *In Re: Independent Wholesale, Inc.*, Case No. 06-00882, in the United States Bankruptcy Court, Middle District of Florida (the "Bankruptcy Matter").

14.    The Bonds were in effect continuously prior to and on the Petition Date.

15.    On or about August 17, 2006, the State filed two (2) Proofs of Claim (respectively, the "Cigarette Proof of Claim" and the "Tobacco Proof of Claim," and together, the "Proofs of Claim") in the Bankruptcy Matter for cigarette tax stamps and tobacco tax stamps sold by the State to Independent on credit prior to the Petition Date and for which Independent has not paid (true and correct copies of said Proofs of Claim are attached hereto as **Exhibit 4 and Exhibit 5**, respectively, and incorporated herein by reference).

16.    The State's Cigarette Proof of Claim claims $512,122.57 due and owing for cigarette tax stamps sold to Independent on credit on or prior to the Petition Date.

17.    The State's Tobacco Proof of Claim claims $128,889.44 due and owing for tobacco product tax stamps sold to Independent on credit on or prior to the Petition Date.

4

18.    Including the Proofs of Claim filed by the State, various unsecured and priority creditors of Independent have filed proofs of claim in excess of $1.55 million. Further, a secured creditor who alleges to have a lien on all of Independent's assets has filed a secured proof of claim in the sum of $8.597 million.

19.    Independent filed a motion in the Bankruptcy Matter to sell substantially all of its assets for the sum of $3.098 million and which sum will be insufficient to pay off even its secured creditor.

20.    In light of the respective penal sums of the Bonds, American may be liable to the State for Independent's failure to pay for tax stamp purchases on or prior to the Petition Date in the total amount of $562,122.57, to wit., $512,122.57 in unpaid cigarette stamp taxes and $50,000.00 in unpaid loose tobacco stamp taxes (together, the "Bonded Tax Claims").

21.    The Bonded Tax Claims constitute "liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety...may sustain or incur by reason of, or in consequence of, the execution of such bonds," as provided in the Agreements, and as to which Defendants are obligated to indemnify American.

22.    The Bonded Tax Claims remain unpaid and outstanding.

23.    As more fully set forth in the Declaration of Mark G. Ledwin, Esq. submitted herewith, American has incurred and paid attorneys' fees and expenses for the period of April 29, 2006 through August 31, 2007, in the sum of $51,365.86 in connection with the Bankruptcy Matter and the instant litigation for which it is entitled to be indemnified by Defendants under the Agreements. American will incur additional attorneys' fees and expenses in connection with the preparation and filing of this motion of $12,000.00 for which it is entitled to be indemnified

5

by Defendants. American believes that all such attorneys' fees and expenses totaling $63,365.86 are reasonable.

24.    American has posted a reserve of its own funds in excess of $613,000.00 to cover losses on the Bonds and related fees and expenses. In so doing, American has set aside and segregated funds to pay its obligations under the Bonds, thereby making such funds unavailable for other corporate purposes.

25.    Pursuant to the express and unequivocal terms of the Agreements, the Defendants are unconditionally obligated to pay to American any and all amounts that American has paid or may be liable to pay in connection with any losses on the Bonds, and any related fees, including but not limited to, attorneys' fees and expenses.

26.    American has duly demanded that Defendants comply with their obligations under the Agreements.

27.    Defendants have failed and refused to place American in funds and otherwise to perform their obligations under the Agreements. As such, Defendants have breached their express obligations under the Agreements.

28.    As a result of Defendants' breach of the Agreements, American has suffered actual damages, and may suffer further and additional damages.

29.    Under the express terms of the Agreements, Defendants are jointly and severally liable for their breach of the Agreements.

**WHEREFORE**, for the reasons more fully set forth in American's Memorandum of Law submitted herewith, American respectfully requests that the Court grant the instant motion for summary judgment and enter a judgment directing Defendants Lemus and Watson, individually, jointly and severally, to post collateral security in the sum of $562,122.57 representing the

6

Bonded Obligations, together with the sum of $63,365.86 representing the reasonable attorneys'

fees and expenses incurred by American in connection with the Bankruptcy Matter and the

instant litigation, for an aggregate total judgment amount of $625,488.43, together with any and

all other relief that this Court shall deem just and proper.

W. WILLIAM COOKSON

Signed and Sworn to Before Me
This ___ Day of November, 2007.

Notary Public

LINDSEY MERCIER
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 05/16/2014

1735986.2

# EXHIBIT 1

Apr.26. 2006  9:12AM  Z°°CH NA SAFE CHICAGO

No.8178   P. 2



## DEPARTMENT OF BUSINESS & PROFESSIONAL REGULATION
### DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO
1940 NORTH MONROE STREET, TALLAHASSEE, FL 32399-1022

### SURETY BOND

DABAT USE ONLY
AUDIT APPROVAL
D.O.
G.O.

*All bond forms are to be filed with the appropriate District Licensing Office when submitting a completed application for a license or permit. Pursuant to Florida Statutes, a surety bond is required by all manufacturers and distributors of alcoholic beverages (561.37, 561.371, and 562.25), all distributing agents and wholesale distributors of cigarettes (210.05(3)(b) and 210.08 ), and all wholesale distributors of tobacco products (210.40), prior to the application approval.*

BOND # __5231786__         BOND AMOUNT $ __1,000,000.__         LICENSE # _____

Check one:
*A separate bond must be submitted for each type of license or permit. See bonding requirements on reverse side for description of each.*

**Alcoholic Beverages:**
- ☐ _____ Manufacturer
- ☐ JDBW Distributor
- ☐ KLD Distributor
- ☐ Bonded Warehouse

**Cigarettes:**
- ☐ Tax-paid Distributor
- ☐ Stamping Distributor-Cash
- ☒ Stamping Distributor-Charge
- ☐ Distributing Agent
- ☐ Exporter

**Tobacco Products:**
- ☐ Distributor

Name __Independent Wholesale, Inc.__         d.b.a. __Independent Wholesale, Inc.__
        *(As it appears on application, license, or permit)*                        *(Trade name)*

doing business in __Orange__ _____ County, State of __Florida__ _____,

__American Guarantee and Liability Insurance__ Company __601 W. 26th St., 5th Floor, New York, NY__ as Principal, and
        *(Name of licensed surety company)*        of        *(Street or PO Box)*

City __New York__         State __NY__         Zip __10001__

as Surety are bound to the State of Florida as of __December 22__ _____ Yr. __2001__ _____ in the amount of

$ __1,000,000.__ _____ for which we bind ourselves, our heirs, personal representatives, successors and assigns, jointly and severally. The condition of this bond is that, if the Principal shall account for and pay over promptly to the Division of Alcoholic Beverages and Tobacco all money due or which shall become due the State of Florida for taxes due on the Principal's operations and shall otherwise comply with the provisions of the:

Check one:
- ☐ Beverage Laws (Chapters 561-568, F.S.)
- ☒ Cigarette Laws (Chapter 210, F.S. Part I)
- ☐ Tobacco Product Laws (Chapter 210, F.S., Part II)

of the State of Florida, then this obligation shall be void; otherwise, it shall remain in full force and effect.

IT IS MUTUALLY AGREED AND UNDERSTOOD BETWEEN ALL PARTIES HERETO, that if the Surety shall so elect, this bond may be cancelled and discontinued by giving sixty days notice in writing to the Division of Alcoholic Beverages and Tobacco, Department of Business and Professional Regulation, and this bond shall be deemed cancelled at the expiration of said sixty days, the said Surety remaining liable for all or any act or acts covered by this bond which may have been committed by the Principal up to the date of cancellation, under the terms, conditions, and provisions of this bond.

Signed and sealed on: __December 20, 2001__

__Independent Wholesale, Inc.__
        *(Type Name of Applicant)*

_____
        *(Signature of Principal/Applicant)*

COUNTERSIGNED BY:

_____
James W. Dunn

NOTE: Attach to this bond a properly certified copy of the Surety Agent's Power of Attorney.

__American Guarantee and Liability Insurance__ company
        *(Type Name of Surety Company)*

_____
        *(Signature and Office for Surety)*
Laurie Pflug, Attorney-in-Fact

DBPR Form AB&T 4000A-035
Revised 10/99



PLAINTIFFS
EXHIBIT No. ____
FOR IDENTIFICATION
DATE ____

Apr.26. 2006  9:12AM   ZU~CH NA SAFE CHICAGO                                No.8178   P. 3



## DEPARTMENT OF BUSINESS & PROFESSIONAL REGULATION
### DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO
1940 NORTH MONROE STREET, TALLAHASSEE, FL 32399-1022

### SURETY BOND

| DAB&T USE ONLY AUDIT APPROVAL |
|---|
| D.O. ___/___/___ |
| C.O. ___/___/___ |

*All bond forms are to be filed with the appropriate District Licensing Office when submitting a completed application for a license or permit. Pursuant to Florida Statutes, a surety bond is required by all manufacturers and distributors of alcoholic beverages (561.37, 561.371, and 562.25), all distributing agents and wholesale distributors of cigarettes (210.05(3)(b) and 210.08 ), and all wholesale distributors of tobacco products (210.40), prior to the application approval.*

BOND # ___5231787___                    BOND AMOUNT $ ___50,000.___                    LICENSE # _____

Check one:

A separate bond must be submitted for each type of license or permit. See bonding requirements on reverse side for description of each.

**Alcoholic Beverages:**
- [ ] Manufacturer
- [ ] JDBW Distributor
- [ ] KLD Distributor
- [ ] Bonded Warehouse

**Cigarettes:**
- [ ] Tax-paid Distributor
- [ ] Stamping Distributor-Cash
- [ ] Stamping Distributor-Charge
- [ ] Distributing Agent
- [ ] Exporter

**Tobacco Products:**
- [x] Distributor

Name ___Independent Wholesale, Inc.___   d.b.a. ___Independent Wholesale, Inc.___
(As it appears on application, license, or permit)                          (Trade name)

doing business in ___Orange___ _____ County, State of ___Florida___

___American Guarantee and Liability Insurance___ Company   ___601 W. 26th Street, 5th Floor, NY,___
(Name of licensed surety company)                                          (Street or PO Box)

City ___New York___                   State ___New York___              Zip ___10001___

as Surety are bound to the State of Florida as of ___December 22, 2001___, Yr. _____ in the amount of

$ ___50,000.___  for which we bind ourselves, our heirs, personal representatives, successors and assigns, jointly and severally. The condition of this bond is that, if the Principal shall account for and pay over promptly to the Division of Alcoholic Beverages and Tobacco all money due or which shall become due the State of Florida for taxes due on the Principal's operations and shall otherwise comply with the provisions of the:

Check one:
- [ ] Beverage Laws (Chapters 561-568, F.S.)
- [ ] Cigarette Laws (Chapter 210, F.S. Part I)
- [x] Tobacco Product Laws (Chapter 210, F.S., Part II)

of the State of Florida, then this obligation shall be void; otherwise, it shall remain in full force and effect.

IT IS MUTUALLY AGREED AND UNDERSTOOD BETWEEN ALL PARTIES HERETO, that if the Surety shall so elect, this bond may be cancelled and discontinued by giving sixty days notice in writing to the Division of Alcoholic Beverages and Tobacco, Department of Business and Professional Regulation, and this bond shall be deemed cancelled at the expiration of said sixty days, the said Surety remaining liable for all or any act or acts covered by this bond which may have been committed by the Principal up to the date of cancellation, under the terms, conditions, and provisions of this bond.

Signed and sealed on: ___December 19, 2001___

___Independent Wholesale, Inc.___
(Type Name of Applicant)

NOTE: Attach to this bond a properly certified copy of the Surety Agent's Power of Attorney.

___American Guarantee and Liability Insurance___
Company
(Type Name of Surety Company)

_____
(Signature of Principal/Applicant)

_____
(Signature and Office for Surety)

COUNTERSIGNED BY:

___Laurie Pflug, Attorney___

_____
James W. Dunn

DBPR Form AB&T 4000A-036
Revised 10/99

# EXHIBIT 2



# ZURICH

### American Guarantee and Liability Insurance Company
One Liberty Plaza, 30th Floor
New York, NY 10006

KNOW ALL MEN BY THESE PRESENTS that whereas the undersigned, individually and collectively, jointly and severally, hereinafter called Indemnitors and the Principal, respectively, have requested and do hereby request ZURICH AMERICAN INSURANCE COMPANY or AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings, or recognizances (all of which are hereinafter included within the term "Bond or Bonds"), on behalf of the Principal, as have been and such as may hereafter be applied for by any of the Indemnitors and/or the Principal, and, whereas the Indemnitors acknowledge that AWMA Management and Services Corp. ("MASC") has agreed to provide certain collateral to Surety as security for the Bonds, and whereas, the undersigned acknowledge and agree that Surety expressly requires MASC to provide such collateral in addition to the delivery of this Indemnity Agreement as part of the consideration for the execution by Surety of such Bonds and such Bonds as may hereafter be furnished, and,

whereas MASC expressly requires the delivery of this Indemnity Agreement as consideration for its provision of the above mentioned collateral and; whereas the Indemnitors agree that each of them is beneficially interested in obtaining each Bond and that the value of the consideration received by the Indemnitors from both Surety and MASC is reasonably worth at least as much in their liability under this Indemnity Agreement;

NOW THEREFORE, in consideration of the premises and of the execution of such Bonds, the Principal and the Indemnitors, for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with Surety and MASC, and their respective successors and assigns, as follows:

1. **PREMIUM:** The Indemnitors will pay, when due, all premiums and charges for each of such Bonds in accordance with Surety's rates in effect on the date such Bonds become effective or renewed, as long as liability thereunder shall continue, and until Surety is furnished with satisfactory evidence of its discharge or release from the Bonds and of all liability by reason thereof.

2. **INDEMNITY:** The Indemnitors will exonerate, indemnify, and hold harmless Surety and MASC against any and all liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety or MASC may sustain or incur by reason of, or in consequence of, the execution of such Bonds and any renewal, continuation or successor thereof. The Indemnitors will indemnify Surety and MASC against any and all liability, loss, damages, fees of attorneys, and/or any other expenses which Surety or MASC may sustain or incur by reason of, or in consequence of, reliance upon representations made by the Principal or the Indemnitor(s) regarding defenses available to Principal and/or Surety and/or MASC to claims made against any such Bonds.

3. **SUBSIDIARIES, JV'S, AFFILIATES:** Whereas, the Indemnitors have a substantial, material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is agreed that this Agreement shall apply to any Bonds executed on behalf of any subsidiary, joint venture or corporation of the Principal and/or any Indemnitor or unto others not named herein, now direct or indirect, affiliated company or partnership, joint venture or corporation of the Principal and/or any Indemnitor or unto others not named herein, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled by the Principal or any Indemnitor, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as a Principal or an Indemnitor.

4. **PLACE IN FUNDS:** To further protect, exonerate and save harmless Surety and/or MASC, the Indemnitors shall pay over to Surety, all sums of money which Surety shall pay or cause to be paid or may be liable to pay in connection with such Bond or other obligations, even on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to Surety, as soon as Surety notifies Indemnitors to deposit such funds with Surety, whether or not Surety shall have paid out such sum or any part thereof. Surety, is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, or other obligations for which Indemnitors may be liable to Surety under the terms of this Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitors. The Principal and the Indemnitors shall make full payment of any amount due under this Indemnity Agreement within five (5) days after written demand therefor. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Principal and/or any Indemnitors under this Agreement.

   In addition to the above, as between MASC, and the Principal and the Indemnitors, the Principal and the Indemnitors shall pay over to MASC, all sums of money which MASC shall pay to Surety or otherwise in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to MASC, as soon as MASC notifies Indemnitors to deposit such funds. MASC shall have no obligations to invest or otherwise provide interest on such funds paid to MASC by Indemnitors. The Principal and the Indemnitors shall make full payment of any amount due under this Indemnity Agreement within five (5) days after written demand therefor.

5. **SETTLEMENTS:** Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety and/or the Principal and/or any Indemnitors or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and decision thereon by Surety, absent fraud, shall be final and binding upon the Principal and Indemnitors. An itemized statement of payments made by Surety, for any of the purposes specified herein, sworn to by an officer of Surety, or the copies of checks or drafts for such payments, shall be prima facie evidence of the liability of the Principal and Indemnitors to reimburse Surety and/or MASC, as the case may be, such amounts, with interest at the maximum legal rate from the date of payment.

   In addition to the above, as between MASC, and the Principal and the Indemnitors, MASC shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against MASC, individually, shall or shall not be paid, compromised, resisted, defended, tried or appealed, and any decision thereon by MASC, absent fraud, shall be final and binding upon the Principal and Indemnitors. An itemized statement of payments made by MASC, for any of the purposes specified herein, sworn to by an officer of MASC, or the copies of checks or drafts for such payments, shall be prima facie evidence of the liability of the Principal and Indemnitors to reimburse MASC, such amounts, with interest at the maximum legal rate from the date of payment.

6. **CHANGES:** Surety has the right, in its sole discretion and without notice to the Principal and/or the Indemnitors, to consent to any changes in the Bonds, including but not limited to changes in the penal sums of the Bonds, and the Principal and the Indemnitors shall remain liable to Surety and MASC, as the case may be, under the terms of this Agreement even though their liability may be substantially increased.

7. **DECLINE EXECUTION:** Surety, at its sole option, may decline to execute, participate in, continue and/or renew, or procure the execution, continuance and/or renewal of, any such Bonds.

8. **COLLATERAL POOL:** MASC, at its sole option, may decline to continue to provide the above mentioned collateral pool for the benefit of Principal and/or any Indemnitor, and in any such event, the Principal and the Indemnitors shall remain liable to MASC in accordance with the terms of this Indemnity Agreement.



9.  OTHER SURETIES:  If Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such Bonds, this instrument shall inure to the benefit of such other company or companies and its or their successors and assigns.

10. SUITS:  Separate suits may be brought by Surety and/or MASC on this Agreement against any or all of the undersigned and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other names of action whether theretofore or thereafter arising.

11. ENTIRE AGREEMENT:  This writing constitutes the entirety of the Agreement between Principal, Indemnitors, and Surety regarding the execution of Bonds and handling of claims against such Bonds.  It may not be added to, changed, or modified orally.  No addition, change, or modification shall be effective unless specifically agreed in writing.  Notwithstanding the first sentence of this paragraph, this Agreement is in addition to and not in lieu of any prior agreements which have or may have been executed for the benefit of Surety and/or MASC, as the case may be, by the Principal and/or the Indemnitors, or any of them or any party of this Agreement.

12. ATTORNEY IN FACT AND ASSIGNMENT:  In the event that the Principal or any of the Indemnitors are in default or in breach of their obligations under the Bonds, the Principal and Indemnitors irrevocably appoint each of MASC and Surety as their attorney-in-fact with the right to exercise all of the rights of the Principal and/or any of the Indemnitors assigned, conveyed and transferred by this Agreement, and in the name of the Principal and/or any of the Indemnitors to make, execute, endorse and deliver any and all documents, papers or other instruments deemed necessary and proper by Surety and MASC, as the case may be.  The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by MASC and/or Surety as attorney-in-fact.

13. JURISDICTION:  The Principal and Indemnitors irrevocably consent to the exclusive jurisdiction of the Courts of the County and State of New York and the Federal Courts of the Southern District of New York in all matters affecting or arising out of their obligations under this Agreement and agree that, the construction, validity and performance of this Agreement shall be governed by the laws of the State of New York.

14. UNIFORM COMMERCIAL CODE.  Surety may, at its option, file or record this Agreement as a Security Agreement or as a part of a financing statement or as notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but the filing or recording of such document shall be solely at the option of Surety and any failure to do so shall not release or impair any of the obligations of the Principal and the Indemnitors under this Agreement.  Any copy of this Agreement certified by Surety, so to be, shall be considered for purposes of filing as a financing statement, an original copy.  The obligations of the Principal and the Indemnitors to MASC hereunder are independent of their obligations to Surety hereunder.  No act or omission by Surety shall effect the obligations of the Principal and the Indemnitors to MASC hereunder, and vice versa, and no amendment, modification, termination or other change in this Indemnity Agreement shall be binding upon MASC unless agreed to in writing by a duly authorized officer of MASC.

15. EXECUTION/JOINT-SEVERAL:  In addition to the rights and remedies provided herein, each of Surety and MASC shall have any and all rights and remedies provided by law and/or in equity, all of which shall be cumulative.  MASC and/or Surety may enforce this Indemnity Agreement against any or all of the Indemnitors and/or the Principal without first exercising any other right or remedy.  The Principal and the Indemnitors shall have no right to enforce this Indemnity Agreement against Surety and/or MASC.  The liability of the Principal and each of the Indemnitors hereunder shall be joint and several.  The obligations of the Principal and the Indemnitors under this Indemnity Agreement are continuing obligations and may not be revoked.  The Principal and the Indemnitors hereby waive any and all actions in respect of this Indemnity Agreement to which they may be entitled.  In case the execution hereof by any of the Principal and the Indemnitors may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other Indemnitor or the Principal, as the case may be.

IN TESTIMONY WHEREOF, the Principal and the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals this 20th day of December, 2001.

By: _____
Witness or Attest

Independant Wholesale, Inc. _____ (SEAL)

By: _____
John Duby, President
Type or Print Name and Title

Address:
N/A

By: _____
Witness or Attest

_____ (SEAL)

By: _____
Type or Print Name and Title

Address:

_____
Signature, Individually
John Watson, Individually
Type or Print Name and Title

Social Security Number:

Address:

_____
Signature, Individually
Gerald Lamus, Individually
Type or Print Name and Title

Social Security Number:

Address:

Page 2 of 3

CORPORATE ACKNOWLEDGMENT

State of: _Florida_ } S.S. :

County of: _Orange_

On this _20th_ day of _December_ 19 _2001_ before

me personally appeared _John Duby_

known to me to be the _President_

of _Independent Wholesale, Inc._
the corporation executing the above instrument, and
acknowledged said corporation to be free and voluntary act and
deed of said corporation, for the uses and purposes therein
mentioned and on oath stated that the seal affixed in the seal of
said corporation and that it was affixed and that said instrument
was executed by order of the Board of Directors of said
corporation.

_Pamela H. Bergeron_
Notary Public

_2-1-04_
Commission Expires

---

State of: _____ } S.S. :

County of: _____

On this ____ day of _____, 19 ___ before

me personally appeared _____

known to me to be the _____

of _____
the corporation executing the above instrument, and
acknowledged said corporation to be free and voluntary act and
deed of said corporation, for the uses and purposes therein
mentioned and on oath stated that the seal affixed is the seal of
said corporation and that it was affixed and that said instrument
was executed by order of the Board of Directors of said
corporation.

_____
Notary Public

_____
Commission Expires

PERSONAL ACKNOWLEDGMENT

State of: _Florida_ } S.S. :

County of: _Orange_

On this _20th_ day of _December_ 19 _2001_

before me personally appeared _John Watson_

to me known and known to me to be the individual(s) described in
and who executed the foregoing agreement and acknowledged
that the execution of the same was for the purposes,
considerations and uses therein set forth as a free and voluntary
act and deed.

_Pamela H. Bergeron_
Notary Public

_2-1-04_
Commission Expires

---

State of: _Florida_ } S.S. :

County of: _Orange_

On this _20th_ day of _December_, 19 _2001_

before me personally appeared _Gerald Lemus_

to me known and known to me to be the individual(s) described in
and who executed the foregoing agreement and acknowledged
that the execution of the same was for the purposes,
considerations and uses therein set forth as a free and voluntary
act and deed.

_Pamela H. Bergeron_
Notary Public

_2-1-04_
Commission Expires

# EXHIBIT 3



# ZURICH



**American Guarantee and Liability Insurance Company**
One Liberty Plaza, 30th Floor
New York, NY 10006

KNOW ALL MEN BY THESE PRESENTS that whereas the undersigned, individually and collectively, jointly and severally, hereinafter called Indemnitors and the Principal, respectively, have requested and do hereby request ZURICH AMERICAN INSURANCE COMPANY or AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, hereinafter referred to as Surety, to execute or procure the execution of such bonds, undertakings, or recognizances (all of which are hereinafter included within the term "Bond or Bonds", on behalf of the Principal, as have been and such as may hereafter be required by any of the Indemnitors and/or the Principal, and, whereas the Indemnitors acknowledge that AWMA Management and Services Corp. ("MASC") has agreed to provide certain collateral to Surety as security for the Bonds, and whereas, the undersigned acknowledge and agree that Surety expressly requires MASC to provide such collateral in addition to the delivery of this Indemnity Agreement as part of the consideration for the execution by Surety of such Bonds and such Bonds as may hereafter be furnished, and,

whereas MASC expressly requires the delivery of this Indemnity Agreement as consideration for its provision of the above mentioned collateral and, whereas the Indemnitors agree that each of them is beneficially interested in obtaining each Bond and that the value of the consideration received by the Indemnitors from both Surety and MASC is reasonably worth at least as much as their liability under this Indemnity Agreement.

NOW THEREFORE, in consideration of the premises and of the execution of such Bonds, the Principal and the Indemnitors, for themselves, their heirs, executors, administrators, successors and assigns, do hereby jointly and severally covenant and agree with Surety and MASC, and their respective successors and assigns, as follows:

1. **PREMIUM:** The Indemnitors will pay, when due, all premiums and charges for each of the Bonds in accordance with Surety's rates in effect on the date such Bonds become effective or renewed, as long as liability thereunder shall continue, and until Surety is furnished with satisfactory evidence of its discharge or release from the Bonds and of all liability by reason thereof.

2. **INDEMNITY:** The Indemnitors will exonerate, indemnify, and hold harmless Surety and MASC against any and all liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety or MASC may sustain or incur by reason of, or in consequence of, the execution of such Bonds and any renewal, continuation or successor thereof. The Indemnitors will indemnify Surety and MASC against any and all liability, loss, damages, fees of attorneys, and/or any other expenses which Surety or MASC may sustain or incur by reason of, or in consequence of, reliance upon representations made by the Principal or the Indemnitor(s) regarding defenses available to Principal and/or Surety and/or MASC to claims made against any such Bonds.

3. **SUBSIDIARIES, JV'S, AFFILIATES:** Whereas, the Indemnitors have a substantial, material and beneficial interest in the obtaining of said Bonds on behalf of various related companies, it is agreed that this Indemnity Agreement shall apply to any Bonds executed on behalf of any subsidiary, subsidiary of a subsidiary whether direct or indirect, affiliated company or partnership, joint venture or corporation of the Principal and/or any Indemnitor or unto others not named herein, now existing or hereafter formed or acquired, and whether partially or wholly owned or controlled by the Principal or any Indemnitor, as fully as if the names and signatures of such subsidiaries or affiliates appeared herein as a Principal or an Indemnitor.

4. **PLACE IN FUNDS:** To further protect, exonerate and save harmless Surety and/or MASC, the Indemnitors shall pay over to Surety, all sums of money which Surety shall pay or cause to be paid or may be liable to pay in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to Surety, as soon as Surety notifies Indemnitors to deposit such funds with Surety, whether or not Surety shall have paid out such sum or any part thereof. Surety is hereby authorized to use such funds, or any part thereof, in payment or settlement of any such demand, claim, liability, or other obligations for which Indemnitors may be liable to Surety under the terms of this Indemnity Agreement. Surety shall have no obligation to invest or otherwise provide interest on such funds paid to Surety by Indemnitors. The Principal and the Indemnitors shall make full payment of any amount due under this Indemnity Agreement within five (5) days after written demand therefor. Surety may apply any unused funds as collateral security to any other Bond or obligation of the Principal and/or any Indemnitors under this Indemnity Agreement;

In addition to the above, as between MASC, and the Principal and the Indemnitors, the Principal and the Indemnitors shall pay over to MASC, all sums of money which MASC shall pay to Surety or otherwise in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith. Such payment shall be made to MASC, as soon as MASC notifies Indemnitors to deposit such funds. MASC shall have no obligation to invest or otherwise provide interest on such funds paid to MASC by Indemnitors. The Principal and the Indemnitors shall make full payment of any amount due under this Indemnity Agreement within five (5) days after written demand therefor.

5. **SETTLEMENTS:** Surety shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against Surety and/or the Principal and/or any Indemnitors or any one of them on any such Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and decision thereon by Surety, absent fraud, shall be final and binding upon the Principal and Indemnitors. An itemized statement of payments made by Surety, for any of the purposes specified herein, sworn to by an officer of Surety, or the copies of checks or drafts for such payments, shall be prima facie evidence of the liability of the Principal and Indemnitors to reimburse Surety and/or MASC, as the case may be, such amounts, with interest at the maximum legal rate from the date of payment.

In addition to the above, as between MASC, and the Principal and the Indemnitors, MASC shall have the exclusive right to decide and determine whether any claim, liability, suit or judgment made or brought against MASC, individually, shall or shall not be paid, compromised, resisted, defended, tried or appealed, and any decisions thereon by MASC, absent fraud, shall be final and binding upon the Principal and Indemnitors. An itemized statement of payments made by MASC, for any of the purposes specified herein, sworn to by an officer of MASC, or the copies of checks or drafts for such payments, shall be prima facie evidence of the liability of the Principal and Indemnitors to reimburse MASC, such amounts, with interest at the maximum legal rate from the date of payment.

6. **CHANGES:** Surety has the right, in its sole discretion and without notice to the Principal and/or the Indemnitors, to consent to any changes in the Bonds, including but not limited to changes in the penal sums of the Bonds, and the Principal and the Indemnitors shall remain liable to Surety and MASC, as the case may be, under the terms of this Indemnity Agreement even though their liability may be substantially increased.

7. **DECLINE EXECUTION:** Surety, at its option, may decline to execute, participate in, continue and/or renew, or procure the execution, continuance and/or renewal of, any such Bonds.

8. **COLLATERAL POOL:** MASC, at its sole option, may decline to continue to provide the above mentioned collateral pool for the benefit of Principal and/or any Indemnitor, and in any such event, the Principal and the Indemnitors shall remain liable to MASC in accordance with the terms of this Indemnity Agreement.

Page 1 of 4



9. **GRANT OF SECURITY INTEREST:** In addition to any and all rights, remedies and interests granted by Principal and/or any Indemnitors to Surety and MASC in this Indemnity Agreement, the Principal and each Indemnitor hereby assigns, transfers and pledges to Surety and MASC, and grants each of Surety and MASC, a continuing security interest in all of each Indemnitor's and Principal's respective right, title and interest in and to the following property: cigarette tax stamps, excise tax stamps, adhesive stamps, meter stamps and the like, whether affixed or unaffixed, purchased or otherwise acquired by Principal and/or its affiliates under any Indemnitor including, but not limited to, any of the same that are purchased on credit upon the condition that in the event that the purchaser shall not timely pay therefor, Surety and/or its affiliates shall be liable therefor under a bond ("Tax Stamps"), any cash and non-cash proceeds and products of any of the foregoing, any payments under insurance (whether or not the Principal or any Indemnitors are loss payees thereof) or any indemnity, warranty or guaranty payable by reason of loss or damage to, or otherwise with respect to, any of the foregoing collateral, and any and all additions and accessions to the foregoing and performance of any and all obligations of Principal and/or its affiliates and each Indemnitor to each of Surety and MASC with respect to any Bonds and/or under this Indemnity Agreement (collectively, the "Secured Obligations"). The security interests granted herein shall be and remain continuing security interests in the Collateral and shall remain in full force and effect until any and all of the Secured Obligations are fully and finally performed.

10. **SUBORDINATION:** Principal and the Indemnitors shall cause any person or entity having or claiming any security or other interest in any of the Collateral to enter into an Intercreditor and Subordination Agreement in form and substance acceptable to Surety and MASC which has the effect, inter alia, of subordinating any lien and security interest of such person or entity with respect to the Collateral to the lien and security interest of Surety and MASC. Principal and the Indemnitors each covenant that it shall not grant to any person or entity any security interest in or lien upon any of the Collateral, or suffer or permit the filing or recording of any financing statement claiming any such security interest or lien, unless such person or entity has entered into an Intercreditor and Subordination Agreement as provided herein.

11. **PRINCIPAL AND INDEMNITORS REMAIN LIABLE:** Anything to the contrary notwithstanding: (i) Principal and each Indemnitor shall remain liable for any obligations and burdens relating to the Bonds, the Collateral and this Indemnity Agreement as if no security interest was granted hereunder; (ii) the exercise by Surety and/or MASC of any rights hereunder shall not release Principal, any of its affiliates, or any Indemnitor from its respective duties or obligations to Surety and MASC; and (c) neither Surety nor MASC shall have any obligation or liability with respect to the Collateral by virtue of this Indemnity Agreement, nor shall either of them be obligated to perform any of the obligations or duties of Principal, its affiliates or any Indemnitor with respect thereto or to take any action to collect or enforce any claim for payment. The rights of Surety and MASC, the assignments, transfers, pledges and security interests granted hereunder, and all obligations of Principal and each Indemnitor hereunder shall be absolute and unconditional and shall not be impaired or released by: (i) any amendment or relating to this time, manner or place of payment or performance of, or in any other term of, any or all of the Secured Obligations; (iii) any release or exchange of any Collateral, except with respect to the Collateral that is released or exchanged; (iv) any nonperfection of a security interest in all or any portion of the Collateral or any other collateral provided for payment or performance of the Secured Obligations; (v) any release of a person or entity primarily, secondarily or otherwise liable with respect to the Secured Obligations, or (vi) any other circumstances that otherwise may constitute a defense available to, or a discharge of, Principal, any of its affiliates or any Indemnitor, or a third party grantor of a security interest or pledgor of collateral.

12. **CAPITAL TRANSACTIONS:**

a. In the event that Principal and/or any of its affiliates contemplates entering into any agreement pursuant to which it may undertake a Capital Transaction (as hereinafter defined), Principal shall provide Surety with notice of the same and copies of any such agreements and related documents at least ten (10) business days before any such agreement is executed or otherwise becomes effective. Principal and each Indemnitor hereby represents and covenants that any such Capital Transaction agreement shall provide that (i) any and all unaffixed Tax Stamps shall be returned to the appropriate taxing authority, and (ii) any and all proceeds of any Tax Stamps including, but not limited to, any of the same arising from any transfer of Inventory, shall be paid over to the appropriate taxing authority, both coincident with the closing of the Capital Transaction. Any breach of any of the duties, representations, warranties, covenants or provisions in this Section 12 shall be considered an immediate breach of this Indemnity Agreement and, in addition to other remedies, shall entitle Surety and/or MASC to immediately resort to the courts to enforce its rights.

b. It is acknowledged and agreed that remedies at law for any breach or threatened breach of the obligations under Section 12a will be inadequate. Accordingly, in addition to any other available remedies (including, but not limited to, seeking monetary damages), Surety and/or MASC shall be entitled to temporary and permanent injunctive and other equitable relief without being required to post a bond or other security, and without having to prove or otherwise establish the inadequacy of any remedies at law for the breach or threatened breach. Principal, for itself and its affiliates, and each Indemnitor further agrees that it shall not plead or otherwise defend any claim of breach or threatened breach hereof on grounds of adequate remedy at law or any element thereof in any action for injunctive or other equitable relief.

c. For purposes hereof, "Capital Transaction" shall mean any merger, sale, exchange, transfer, financing, refinancing or liquidation directly or indirectly affecting the Secured Obligations or the Collateral including, but not limited to, any disposition of all or substantially all of the Inventory and/or other assets of Principal and/or any of its affiliates that, in accordance with generally accepted accounting principles, is considered capital in nature.

13. **DEFAULT:** Principal, for itself and its affiliates, and each Indemnitor hereby covenants and agrees to timely pay for any and all Tax Stamps and otherwise to perform any and all obligations with respect to the Bonds, the Collateral and this Indemnity Agreement, and any failure so to do shall constitute a material breach of this Indemnity Agreement without the necessity of any notice from Surety or MASC. In the event of any such default, Surety and MASC shall be entitled to any and all rights and remedies provided herein or otherwise available at law and/or in equity, all of which shall be cumulative.

14. **ATTORNEY IN FACT AND ASSIGNMENT:** In the event that the Principal or any of the Indemnitors are in default of or in breach of their obligations under the Bonds, the Principal and Indemnitors irrevocably appoint each of MASC and Surety as their attorney-in-fact with the right to exercise all of the rights of the Principal and/or any of the Indemnitors assigned, conveyed and transferred by this Indemnity Agreement, and in the name of the Principal and/or any of the Indemnitors to make, execute, endorse and deliver any and all documents, papers or other instruments deemed necessary and proper by Surety and MASC, as the case may be. The Principal and Indemnitors hereby ratify and confirm all acts and actions taken and done by MASC and/or Surety as attorney-in-fact.

15. **JURISDICTION:** The Principal and Indemnitors irrevocably consent to the exclusive jurisdiction of the Courts of the County and State of New York and the Federal Courts of the Southern District of New York in all matters affecting or arising out of their obligations under this Indemnity Agreement and agree that the construction, validity and performance of this Indemnity Agreement shall be governed by the laws of the State of New York. Notwithstanding the foregoing, to the extent that the validity or perfection of the security interests granted hereunder or remedies provided hereunder in respect of any particular Collateral are governed by the laws of a jurisdiction other than the State of New York, such matters shall be governed by, and construed and interpreted in accordance with, the laws of such other jurisdiction.

16. **UNIFORM COMMERCIAL CODE:** Surety may, at its option, file or record this Indemnity Agreement as a Security Agreement or as a prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute or regulation of any jurisdiction or agency, but the filing or recording of such document shall be solely at the option of Surety and any failure to do so shall not release or impair any of the obligations of the Principal and the Indemnitors under this Indemnity Agreement. Any copy of this Indemnity Agreement certified by Surety, so to be,

Page 2 of 4

shall be considered for purposes of filing as ... uincing statement, an original copy. The obligations of the ...ncipal and the Indemnitors to MASC hereunder are independent of their obligations to Surety hereunder. No act or omission by Surety shall affect the obligations of the Principal and the Indemnitors to MASC hereunder, and vice versa, and no amendment, modification, termination or other change in this Indemnity Agreement shall be binding upon MASC unless agreed to in writing by a duly authorized officer of MASC.

17.  **OTHER SURETIES:** If Surety shall procure any other company or companies to execute or join with it in executing, or to reinsure, any such Bonds, this instrument shall inure to the benefit of such other company or companies and its or their successors and assigns.

18.  **SUITS:** Separate suits may be brought by Surety and/or MASC on this Indemnity Agreement against any or all of the undersigned and the bringing of a suit or the recovery of a judgment upon any cause of action shall not prejudice nor bar the bringing of other suits upon other causes of action whether theretofore or thereafter arising.

19.  **ENTIRE AGREEMENT:** This writing constitutes the entirety of the agreement between Principal, Indemnitors, and Surety regarding the execution of Bonds and handling of claims against such Bonds. It may not be added to, changed, or modified orally. No addition, change, or modification shall be effective unless specifically agreed in writing. Notwithstanding the first sentence of this paragraph, this Indemnity Agreement is in addition to and not in lieu of any prior agreements which have or may have been executed for the benefit of Surety and/or MASC, as the case may be, by the Principal and/or the Indemnitors, or any of them or any party of this Indemnity Agreement.

20.  **EXECUTION/JOINT/SEVERAL:** In addition to the rights and remedies provided herein, each of Surety and MASC shall have any and all rights and remedies provided by law and/or in equity, all of which shall be cumulative. MASC and/or Surety may enforce this Indemnity Agreement against any or all of the Indemnitors and/or the Principal without first exercising any other right or remedy. The Principal and the Indemnitors shall have no right to enforce this Indemnity Agreement against Surety and/or MASC. The liability of the Principal and each of the Indemnitors hereunder shall be joint and several. The obligations of the Principal and the Indemnitors under this Indemnity Agreement are continuing obligations and may not be revoked. The Principal and the Indemnitors hereby waive any and all notices in respect of this Indemnity Agreement to which they may be entitled. In case the execution hereof by any of the Principal and the Indemnitors may be defective or invalid for any reason, such defect or invalidity shall not in any manner affect the validity of this obligation or the liability hereunder of any other Indemnitor or the Principal, as the case may be. This Indemnity Agreement may be executed in counterparts which, taken together, shall have the same effect as though all parties executing such counterparts have executed one and the same document.

IN TESTIMONY WHEREOF, the Principal and the Indemnitors, intending to be legally bound hereby, have hereunder set their hands and affixed their seals this

_14th_ day of _November_ 200_7_.

By: _____
Witness or Attest

By: _____
Witness or Attest

_____
Signature, Individually
John Watson, Individually
Type or Print Name and Title

Social Security Number:

Address:

Independent Wholesale, Inc.        (SEAL)

By: _____
John Duby, President
Type or Print Name and Title

Address: _____

_____        (SEAL)

By: _____

Type or Print Name and Title

Address: _____

_____
Signature, Individually
Gerald Lemus, Individually
Type or Print Name and Title

Social Security Number:

Address:

CORPORATE ACKNOWLEDGMENT

State of: _Florida_ } S.S. :

County of: _Orange_

On this _14th_ day of _November_ _20_ _19 02_ before

me personally appeared _John Duhy_

known to me to be the _President_

of _Independent Wholesale, Inc._ the
corporation executing the above instrument, and acknowledged said
corporation to be free and voluntary act and deed of said corporation, for
the uses and purposes therein mentioned and on oath stated that the seal
affixed is the seal of said corporation and that it was affixed and that said
instrument was executed by order of the Board of Directors of said
corporation.

_Pamela H. Bergera_
Notary Public

_2-1-04_

PAMELA H. BERGERON
My Comm Exp. 2/1/04
No. CC 907085
[✓]Personally Known [ ]Other I.D.

State of: _____ } S.S. :

County of: _____

On this _____ day of _____, 19 _____ before

me personally appeared _____

known to me to be the _____

of _____ the
corporation executing the above instrument, and acknowledged said
corporation to be free and voluntary act and deed of said corporation, for
the uses and purposes therein mentioned and on oath stated that the seal
affixed is the seal of said corporation and that it was affixed and that said
instrument was executed by order of the Board of Directors of said
corporation.

_____
Notary Public

_____
Commission Expires

PERSONAL ACKNOWLEDGMENT

State of: _Florida_ } S.S. :

County of: _Orange_

On this _14th_ day of _November_ _20_ _19 02_

before me personally appeared

_John Watson_

to me known and known to me to be the individual(s) described in and
who executed the foregoing agreement and acknowledged that the
execution of the same was for the purposes, considerations and uses
therein set forth as a free and voluntary act and deed.

_Pamela H. Bergera_
Notary Public

_2-1-04_
Commission Expires

PAMELA H. BERGERON
My Comm Exp. 2/1/04
No. CC 907085
[✓]Personally Known [ ]Other I.D.

State of: _Florida_ } S.S. :

County of: _Orange_

On this _14th_ day of _November_ _20_ _19 02_

before me personally appeared

_Gerald Lemus_

to me known and known to me to be the individual(s) described in and
who executed the foregoing agreement and acknowledged that the
execution of the same was for the purposes, considerations and uses
therein set forth as a free and voluntary act and deed.

_Pamela H. Bergera_
Notary Public

_2-1-04_
Commission Expires

PAMELA H. BERGERON
My Comm Exp. 2/1/04
No. CC 907085
[✓]Personally Known [ ]Other I.D.

**EXHIBIT 4**

FORM B10 (Official Form 10) (10/

| UNITED STATES BANKRUPTCY COURT  Middle   DISTRICT OF  Florida | PROOF OF CLAIM |
|---|---|

Name of Debtor
**Independent Wholesale, Inc.**

Case Number
06-022081

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Dept of Business & Professional Regulation,
Division of Alcoholic Beverages & Tobacco

Name and address where notices should be sent:
1940 N. Monroe Street
Office of General Counsel Ste 42
Tallahassee, FL 32399
Telephone number: (850) 921-6593

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor: 58-00272

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated:_____

**1.   Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☒ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ (date) to _____ (date)

**2.   Date debt was incurred:** 05/01/04 - 04/21/06

**3.   If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

Unsecured Priority Claim
☒ Check this box if you have an unsecured claim, all or part of which is entitled to priority.
Amount entitled to priority $512,122.57

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

Secured Claim
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____
Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5.   Total Amount of Claim at Time Case Filed:**
$_____ _____  512,623.87   512,623.87
(unsecured)  (secured)  (priority)   (Total)
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6.   Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7.   Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8.   Date-Stamped Copy:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date
08/17/2006

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Adrienne C. Rodgers - Assistant General Counsel

*Penalty for presenting fraudulent claim:* Fine of up ... up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



PLAINTIFF'S
EXHIBIT NO.
FOR IDENTIFICATION
DATE      RPTR

FORM B10 (Official Form 10) (10/0

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## — DEFINITIONS —

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Classification of Claim**
**Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the

amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

**5. Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**6. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**7. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

# EXHIBIT 5

FORM B10 (Official Form 10) (10/)

| UNITED STATES BANKRUPTCY COURT <u>Middle</u>   DISTRICT OF <u>Florida</u> | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>Independent Wholesale, Inc. | Case Number<br>06-022081 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>Dept of Business & Professional Regulation,<br><br>Division of Alcoholic Beverages & Tobacco | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br>1940 N. Monroe Street<br>Office of General Counsel Ste 42<br>Tallahassee, FL 32399<br>Telephone number: (850) 921-6593 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Last four digits of account or other number by which creditor identifies debtor: 58-00277 | Check here ☐ replaces<br>if this claim ☐ amends  a previously filed claim, dated:_____ |

THIS SPACE IS FOR COURT USE ONLY

| 1.   Basis for Claim | |
|---|---|
| ☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☒ Taxes<br>☒ Other  Interest & Penalty | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last four digits of your SS #: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>       (date)              (date) |

| 2.   Date debt was incurred: 05/01/04 - 04/21/06 | 3.   If court judgment, date obtained: |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

| Unsecured Nonpriority Claim $_____<br><br>☐   Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | Secured Claim<br><br>☐   Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral: |
|---|---|
| **Unsecured Priority Claim**<br><br>☒   Check this box if you have an unsecured claim, all or part of which is entitled to priority.<br><br>Amount entitled to priority  $128,889.44 | ☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____<br>Value of Collateral:   $_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____ |
| Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)<br><br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☒ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br><br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 5.   Total Amount of Claim at Time Case Filed: | $  11,442.08 | 117,447.36 | 128,889.44 |
|---|---|---|---|
| | (unsecured) | (secured)   (priority) | (Total) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**6. Credits:**   The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br><br>08/17/2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>Adrienne C. Rodgers - Assistant General Counsel | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to _____ up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

PLAINTIFF'S<br>EXHIBIT NO. ____<br>FOR IDENTIFICATION<br>DATE ____

FORM B10 (Official Form 10) (10/0

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## —— DEFINITIONS ——

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

---

# Items to be completed in Proof of Claim form (if not already filled in)

## Court, Name of Debtor, and Case Number:

Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

## Information about Creditor:

Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

## 1. Basis for Claim:

Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

## 2. Date Debt Incurred:

Fill in the date when the debt first was owed by the debtor.

## 3. Court Judgments:

If you have a court judgment for this debt, state the date the court entered the judgment.

## 4. Classification of Claim

### Secured Claim:

Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the

amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

### Unsecured Priority Claim:

Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

### Unsecured Nonpriority Claim:

Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

## 5. Total Amount of Claim at Time Case Filed:

Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

## 6. Credits:

By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

## 7. Supporting Documents:

You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.