USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/18/2008

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY

                Plaintiff,

     - against -                         07 Civ. 6038 (DAB)
                                              ORDER
GERALD M. LEMUS, Individually, and
JOHN R. WATSON, Individually,

                Defendants.
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

Plaintiff American Guarantee and Liability Insurance Company has filed suit against Defendants Gerald M. Lemus and John R. Watson, alleging breach of two Indemnity Agreements. Now before this Court is Plaintiff's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Defendants, both proceeding pro se, have filed no response to Plaintiff's motion. For the reasons contained herein, Plaintiff's Motion is GRANTED.

## BACKGROUND

Plaintiff served the instant Motion for Summary Judgment and all supporting documents thereto on both Defendants on November 9, 2007, including the Notice to Pro Se Litigant Opposing Motion for Summary Judgment required by Local Civil Rule 56.2. Defendants have failed to file any opposition to the motion.

Therefore, pursuant to Local Civil Rule 56.1(c), the material facts stated by Plaintiff in its Local Rule 56.1 Statement of Material Facts are deemed to be admitted as true.

Plaintiff is a a New York insurance company. (Pl. 56.1 Stmt. ¶ 1.) Defendants are individuals residing in Florida. (Id. ¶¶ 2-3.) Defendants are the principal owners of non-party Independent Wholesale, Inc. ("Independent"). (Id. ¶ 5.) Independent is a "distributor of certain products, including, but not limited to, cigarettes and loose tobacco products." (Id. ¶ 4.) In the State of Florida, businesses that distribute cigarettes or tobacco products are required by law to "attach a tax stamp to each product indicating that the State tax on the product has been paid"; the tax stamps must be purchased from the state. (Id. ¶ 6.) Furthermore, Florida law requires that:

> a surety bond be posted with the State by all wholesale distributors of cigarettes and tobacco products, which bond obligates the surety thereon to pay to the State any cigarette or tobacco taxes not paid by the principal on the bond.

(Id. ¶ 7.) "Once the bonds are posted, the distributor may purchase tax stamps on credit from the State in amounts up to the penal sum of the bonds." (Id.)

2

On December 20, 2001, at Defendants' request, Plaintiff issued a Florida surety bond, as required under statute:

> providing bond credit for purchases by Independent of cigarette tax stamps, and a Surety Bond having a penal sum in the amount of $1,000,000.00 (the "Cigarette Bond"), and providing bond credit for purchases by Independent of cigarette tax stamps, and a Surety Bond having a penal sum in the amount of $50,000.00 (the "Tobacco Bond"), and providing bond credit for purchases by Independent of loose tobacco products . . . .

(Id. ¶ 8.) On December 20, 2001 and again on November 14, 2002, Defendants executed Indemnity Agreements whereby they agreed that Plaintiff, as a surety, could potentially hold them liable, jointly and severally, in connection with the cigarette and tobacco bonds issued by Plaintiff on Independent's behalf. (Id. ¶ 10; Compl. Exs. 2 & 3.)

On April 21, 2006, Independent filed for Chapter 11 bankruptcy in the United States Bankruptcy for the Middle District of Florida. (Pl. 56.1 Stmt. ¶ 11.) The cigarette and tobacco bonds issued by Plaintiff were in continuous effect as of April 21, 2006. (Id. ¶ 12.) As a result of Independent's bankruptcy, and in light of the penal sums provided for in the cigarette and tobacco bonds it issued on Independent's behalf, Plaintiff "may be liable to the [State of Florida] for Independent's failure to pay for tax stamp purchases on or prior

to [April 21, 2006] in the total amount of $562,122.57, to wit, $512,122.57 in unpaid cigarette stamp taxes and $50,000.00 in unpaid loose tobacco stamp taxes . . . ." (Id. ¶ 18.)

Plaintiff's potential liability to the State of Florida for Independent's failure to pay for the cigarette and tobacco stamps it purchased constitutes "a liability, loss, cost, damages, fees of attorneys, and/or other expenses which [Plaintiff] . . . may sustain or incur by reason of, or in consequence of, the execution of such bonds" under the Parties' Indemnity Agreements. (Id. ¶ 19; Compl. Exs. 2 & 3.) As such, pursuant to the Parties' Indemnity Agreements, Defendants are obligated to pay Plaintiff the amounts that it has incurred in connection with Independent's cigarette and tobacco tax liabilities and any related attorneys' fees and costs. (Pl. 56.1 Stmt. ¶ 27.) Plaintiff "has posted a reserve of its own funds in excess of $613,000.00 to cover losses on the Bonds and related fees and expenses." (Id. ¶ 26.)

Despite demands from Plaintiff, Defendants have failed to comply with their obligations under the indemnification agreements and are therefore jointly and severally liable for such breach. (Id. ¶¶ 28-30.) On June 26, 2007, Plaintiff filed the instant Compliant Plaintiff, requesting that judgment be

4

entered against Defendants, jointly and severally, in the total aggregate amount of $625,488.43.

## DISCUSSION

A.   Summary Judgment Standard

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).  Genuine issues of material fact cannot be created by mere conclusory allegations. Summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).  While a court must always "resolv[e] ambiguities and draw[ ] reasonable

inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

"Once the moving party has attacked whatever record evidence-if any-the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." Celotex Corp. v. Catrett,

477 U.S. 317, 322 n.3 (1986). The Second Circuit has declared, however, that "where the non-moving party 'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)).

B.  Defendants' Breach of the Indemnity Agreements

The Complaint contains a single cause of action against both Defendants: Breach of the Indemnity Agreements executed by Defendants on December 20, 2001 and November 14, 2002. (Compl. ¶¶ 31-39.) The Indemnity Agreements executed by Defendants each contain the following identical provision (Defendants are referred to as the "Indemnitors" and Plaintiff is referred to as the "Surety"):

> INDEMNITY: The Indemnitors will exonerate, indemnify, and hold harmless Surety . . . against any and all liability, loss, cost, damages, fees of attorneys, and/or other expenses which the Surety . . . may sustain or incur by reason of, or in consequence of, the execution of such bonds and any renewal, continuation or successor thereof.

7

(Compl. Exs. 2 & 3.)  The Agreements also require Defendants to deposit funds into Plaintiff's account, as soon as Plaintiff provides them with notice that it "shall pay or cause to be paid or may be liable to pay in connection with such Bond or other obligations, or on account of any demands, claims, liabilities, of whatever kind or nature in connection therewith."  (Id.)  The Agreements plainly contemplate that Defendants would be liable to Plaintiff upon the occurrence of any of a wide range of contingencies.  Moreover, Defendants agreed that they would also be liable for costs and attorneys' fees that Plaintiff incurs in connection with the cigarette and tobacco bonds it issued on Independent's behalf.

Independent, which filed for Chapter 11 bankruptcy on April 21, 2006, has moved the Bankruptcy Court to "sell substantially all of its assets for the sum of $3.098 million" and that sum will be "insufficient to pay off even its secured creditor." (Pl. 56.1 Stmt. ¶ 17.)  The State of Florida's Division of Alcoholic Beverages and Tobacco has filed claims against Independent in the bankruptcy matter for unpaid cigarette and tobacco taxes accrued prior to Independent's bankruptcy petition totaling $641,012.01.  (Pl. 56.1 Stmt. ¶ 21; Cookson Aff. ¶¶ 16-17 & Exs. 4-5.)  Plaintiff executed Surety Bonds on Independent's behalf in the total amount of $1,050,000.  (Compl. Exs. 1 & 2.)

8

As a result of Independent's bankruptcy and its outstanding cigarette and tobacco tax debt owed to the State of Florida, Plaintiff stands to forfeit to the State of Florida, pursuant to the Surety Bonds, $562,122.57. (Pl. 56.1 Stmt. ¶ 18.) Additionally, Plaintiff believes that an award of "attorneys' fees and expenses totaling $63,365.86 are reasonable" in connection with this action and the proceedings pending before the bankruptcy matter. (Id. ¶ 25.)

Both Indemnity Agreements provide Defendants, the indemnitors, "shall make full payment of any amount due under this Indemnity Agreement within five (5) days after written demand therefor." (Compl. Exs. 2 & 3.) The Complaint alleges that Plaintiff "has duly made demand upon the Defendants for indemnity pursuant to the Agreements." (Id. ¶ 28.) Defendants each admit this allegation in their respective Answers. Defendants, however, have failed to comply with Plaintiff's demand. (Pl. 56.1 Stmt. ¶ 29.)

The Indemnity Agreements provide that they are to be governed by New York Law. (Compl. Exs. 2 & 3.) Under New York law "[i]t is well settled that a surety may secure its rights by a written contract with the principal or another who promises to make good for the loss." In re New York Surety Co., 300 A.D.2d 401, 751 N.Y.S.2d 764 (2d Dep't 2002) (citations omitted). As

with any other contract, [t]he agreement between the parties governs their rights and obligations." Id. (citing BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J., 214 A.D.2d 521, 523, 625 N.Y.S.2d 550 (1st Dep't 1995)). Defendants do not suggest that the Indemnity Agreements are ambiguous in any way and the Court finds that they are indeed clear on their face.

There are no disputed material issues of fact in this action. There is no doubt that (1) Defendants both entered into Indemnity Agreements with Plaintiff in connection with Plaintiff's posting of Surety Bonds on behalf of Independent, (2) that a condition triggering Defendants' obligation to indemnify Plaintiff has occurred, namely Independent's default, as a result of bankruptcy, on cigarette and tobacco tax debts owed to the State of Florida (3) that Plaintiff has made appropriate demand upon the Defendants to comply with the Agreements and (4) that Defendants have failed to comply with the terms of the Agreement. Furthermore, the Court finds Plaintiff's claim for attorneys' fees and costs to be reasonable. Accordingly, the Court finds that Defendants are in breach of the Indemnity Agreements, and therefore, Plaintiff's Motion for Summary Judgment is GRANTED.

CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment against Defendants, pursuant to Fed. R. Civ. P. 56, is hereby GRANTED. The Clerk of Court is hereby directed to enter judgment against Defendants, jointly and severally, in the total amount of $625,488.43. The Clerk of Court is further directed to close the docket in this case.

SO ORDERED.

Dated:   New York, New York
         March 18, 2008

*Deborah A. Batts*
Deborah A. Batts
United States District Judge